UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                              :
SETH MITCHELL,                                :
                                              :
                              Plaintiff,      :
                                              :
              - against -                     :
                                              :
                                              :
U.S. DEPARTMENT OF VETERANS                   :
AFFAIRS and U.S. DEPARTMENT OF                :
DEFENSE,                                      :
                                              :
                              Defendants.     :
                                              :
---------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __11/8/2021__
```

18-CV-2672 (VSB)

**OPINION & ORDER**

Appearances:

Seth Mitchell
*Pro Se Plaintiff*

Brandon Herbert Cowart
Assistant United States Attorney
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Seth Mitchell brings this action against Defendants United States Department of

Veterans Affairs (the "VA") and the United States Department of Defense (the "DoD"),

(collectively, "Defendants") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, *et seq*., and the Privacy Act, 5 U.S.C. § 552a *et seq*.  Plaintiff seeks to obtain records related

to certain benefits from VA-administered programs that were allegedly owed to his grandfather,

Henry Sandler ("Sandler"), a deceased veteran.  Before me is Defendants' motion for summary

judgment and Plaintiff's cross motion for summary judgment.  Because I find that the VA

conducted an adequate search and its redactions of the records were proper, Plaintiff's motion for

summary judgment on his FOIA claim is DENIED, and Defendants' motion is GRANTED. Additionally, because I find that Plaintiff's Privacy Act claim and assorted remaining claims are non-cognizable, Plaintiff's motion as to those claims is DENIED, and Defendants' motion is GRANTED.

## I.   Background and Procedural History[1]

At the center of this case are records related to Henry Sandler's, Plaintiff's grandfather, participation in the VA's life insurance program.  (*See generally* FAC.)[2]  Below I describe the VA's life insurance benefits and recordkeeping, Plaintiff's request to the VA, Plaintiff's request to the DoD, and the procedural history of this case.

### A.  *VA Life Insurance Benefits and Recordkeeping*

Congress offers Veterans a range of benefits for those who meet statutory eligibility criteria, including providing the opportunity to purchase life insurance.  (Weaver Decl. ¶ 5.)[3] The VA's Insurance Service ("Insurance Service") is a department within the Veterans Benefit Administration ("VBA"), which is a component of the VA.  (Defs.' Mem. 2[4]; Weaver Decl. ¶¶ 1, 5.)  The Insurance Service's VA Regional Office & Insurance Center facility ("VAROIC") located in Philadelphia (the "Insurance Center") adjudicates claims for proceeds of VA-issued life insurance policies and is responsible for managing all records concerning life insurance policies issued to Veterans.  (Weaver Decl. ¶ 5.)

---

[1] The facts here are drawn from Defendants' declarations, the parties' motions, and Plaintiff's first amended complaint.  The facts recited in this section are undisputed unless otherwise indicated.  No Local Rule 56.1 Statements were submitted by the parties.

[2] "FAC" refers to Plaintiff's first amended complaint ("First Amended Complaint"), filed on March 29, 2019.  (Doc. 50.)

[3] "Weaver Decl." refers to the declaration of Paul G. Weaver, a VA employee working within the VA's Insurance Service, filed on May 29, 2019.  (Doc. 61.)

[4] "Defs.' Mem." refers to Defendants' memorandum of law in support of their motion for summary judgment, filed on May 29, 2019.  (Doc. 60.)

When a Veteran purchases a life insurance policy, the VA creates an insurance folder which is specific to that Veteran; this folder contains records related to his or her insurance policy. (*Id.* ¶ 6.) These folders are maintained in electronic and paper format. (*Id.* ¶ 7.) Insurance folders in electronic format are stored in the Veterans Insurance Claims Tracking and Response System ("VICTARS"), and in paper form at Federal Archive and Record Centers managed by the National Archives Record Administration ("NARA"). (*Id.*) Currently, VICTARS is the primary storage system used, and the Insurance Service is working to transition paper records to VICTARS. (*Id.* ¶ 8.) Before VICTARS, life insurance records were kept primarily in paper form. (*Id.* ¶ 9.) After 2000, as paper records were generated in connection with an insurance policy, these records were scanned and uploaded to VICTARS. (*Id.*) When transitioning to electronic records, however, the Insurance Center did not address paper records of any inactive insurance policies, (*id.*), and they were not scanned and uploaded to VICTARS, (*id.* ¶ 13.)

Information about inactive insurance policies is maintained in NARA Record Centers. (*Id.* ¶ 10.) VICTARS does not maintain information concerning the location of insurance folders in paper form; however, the VA's Beneficiary Identification Records Locator Subsystem ("BIRLS") stores information concerning the location of Veteran life insurance folders. (*Id.*) "Through the location information provided by BIRLS, Insurance Service staff are able to locate and recall insurance records in paper form." (*Id.*)

### B.  *Plaintiff's Requests to the Insurance Service*

In the fall of 2014, Dionne Dent-Lockett, then the Assistant Chief of the Insurance Claims Division within the Insurance Service, began assisting with Plaintiff's inquiries into the VA life insurance policies of Sandler and Plaintiff's great uncle, veteran Joseph Eiten, as well as

3

Plaintiff's claim for the proceeds of a life insurance policy issued to Sandler.  (*Id.* ¶ 11.)  At the time, Plaintiff was also pursuing an administrative claim for the proceeds of Sandler's insurance policy, which he ultimately appealed to the Board of Veterans' Appeals.  (*See* FAC 5; Pl.'s Sur-reply Ex. B.)[5]  On November 13, 2014, Dent-Lockett sent an email to Plaintiff informing him that there were no proceeds payable on Sandler's life insurance policies.  (Weaver Decl. ¶ 11)  She explained that "Sandler had two insurance policies with the Department of Veterans Affairs," and that the records showed that Sandler had cash surrendered one of the policies in 1992 and that his other policy lapsed for nonpayment of premiums.  (*Id*. Ex. 1, at 4.)  In response, Plaintiff requested by email that "a complete set of VA records for these policies be sent to [him], at your earliest convenience."  (Weaver Decl. ¶ 11.)  This was construed as a FOIA request, and was assigned a FOIA identification number.  (*Id.*)

Dent-Lockett then used Sandler's and Eiten's full names to search VICTARS for their insurance folders; the search yielded no results.  (*Id.* ¶ 12.)  Because folders regarding inactive policies are not scanned and uploaded to VICTARS, Dent-Lockett used Sandler's and Eiten's full names to search BIRLS to locate their insurance folders.  (*Id.* ¶ 13.)  She received the insurance folders in paper form in November 2014.  (*Id.*)  Dent-Lockett created a copy of the folders, redacted certain information pursuant to Exemption 6,[6] and produced these documents to Plaintiff that same month.  (*Id.*)  During the remainder of Dent-Lockett's time as Assistant Chief of the Insurance Claims Division, she kept the original copy of Sandler's insurance folder in her office.  (*Id.* ¶ 15.)  When Dent-Lockett left her position in April 2016, she did not return the Sandler insurance folder to the NARA Records Center—the folder was kept in a locked storage

---

[5] "Pl.'s Sur-reply" refers to Plaintiff's sur-reply, filed on September 9, 2019.  (Doc. 72.)

[6] Exemption 6 provides that FOIA does not apply to "personnel and medical files and similar files" "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

cabinet in her office.  (*Id.*)

On April 12, 2017, Plaintiff emailed Jeanne King, the FOIA officer of the Insurance Center, and explained that he was in the process of prosecuting an appeal before the Board of Veteran's Appeals related to Sandler, and that "[a] substantial aspect of this Prosecuted Appeal (Advanced for Good Cause) lies in VA's failure to make payment on on [sic] accrued Insurance Claim benefits for Mr. Sandler's account."  (Weaver Decl. Ex. 1, at 2–3.)  In the email, Plaintiff requested "a full un-redacted Case File for Mr. Sandler, from the period 1942 - Present from Insurance Team."  (*Id.*)  King then submitted a request to NARA for Sandler's insurance folder, but it could not be located.  (Weaver Decl. ¶ 16.)  On April 14, 2017, King sent an email to Plaintiff explaining that she was "enclosing a copy of an email that was released to [Plaintiff] on November 13, 2014, by the VA Insurance Center, signed by Assistant Chief of Claims Division, Dionne Dent-Lockett" which provided "all of the information that our office was able to locate in regard to the insurance policies held by the deceased veteran" and that she had no additional information to add.  (Weaver Decl. Ex. 1, at 2.)  On November 28, 2017, King notified Plaintiff that she could not locate the records.  (Weaver Decl. ¶ 16.)  Plaintiff appealed this decision, and while the appeal was pending, Sandler's insurance folder was located in Dent-Lockett's office.  (*Id.*)  The appeal was denied as moot, and the matter was remanded to the Insurance Center to provide Plaintiff with any documents that had been added to the insurance file since the November 2014 production.  (*Id.* & Ex. 2.)  Upon remand, it was determined that no additional responsive records were contained in the Sandler insurance folder, and the folder was uploaded into VICTARS.  (*Id.* ¶ 16–17.)

During the course of this litigation, the VA determined that it had not maintained a record of the specific information withheld from the November 2014 production pursuant to Exemption

6.  (*Id.* ¶ 18; Defs.' Mem. 5.)  Therefore, the Insurance Center reprocessed the records responsive

to the FOIA request.  (*Id.*)  The Insurance Center conducted a search in VICTARS by inputting

the full name of Sandler, which located Sandler's insurance folder and included the Sandler

insurance file that had been produced in November 2014.  (Weaver Decl. ¶ 18.)  On November

26, 2018, all responsive records located in the insurance folder, 259 pages in total ("Records"),

were sent to Plaintiff.  (*Id.* ¶ 19; Defs.' Mem. 5.)  Of the 259 pages that were produced, 32 pages

were withheld in part pursuant to Exemption 6.  (*Id.*)  The redactions to the FOIA production

withheld medical information concerning Sandler or third parties; the Social Security number of

Sandler; addresses and telephone numbers of third parties; and financial information concerning

the portion of insurance proceeds to be distributed to beneficiaries upon Sandler's death.  (*Id.*;

*see* Ex. 3 (log of redactions).)

### C.  *Plaintiff's Request to DoD*

The DoD provides various benefits to uniformed service members including health

care through TRICARE, and maintains information relevant to these benefits in an electronic

database, the Defense Enrollment Eligibility Reporting System ("DEERS").  (Herrington Decl. ¶

6.)[7]  DEERS serves as a central source of identity, enrollment, and eligibility verification for

members of the uniformed services, other personnel designated by the DoD, and their eligible

family members.  (*Id.*)  To obtain TRICARE benefits, the beneficiary must be registered in

DEERS.  (*Id.*)  A DEERS account can be accessed through a DS Logon, which is a type of

identification issued and managed by the Defense Manpower Data Center ("DMDC").  (*Id.* ¶ 7.)

Current service members, veterans, eligible dependents, DoD beneficiaries, and surrogates are

---

[7] "Herrington Decl." refers to the Declaration of Mark H. Harrington, Associate Deputy General Counsel in the
Office of General Counsel of the DoD, filed on May 29, 2019.  (Doc. 62.)

among those who are eligible for a DS Logon.  (*Id.* ¶ 8 & Ex. 2.)

On March 22, 2019, Plaintiff sent an email to the DoD Inspector General's FOIA office stating that the "DS Logon Team has illegally denied me access to the DEERS records for a Sponsor," that he "must have placed at least 10 calls to DS Logon Team and have been refused access, and access to a Supervisor, each and every time [he's] called," and demanded that he be "granted a username and password for the referenced DEERS Account immediately."  (*Id.* ¶ 4 & Ex. 1.)  DoD has not responded.  (Defs.' Mem. 6.)

### D.  *Procedural History*

Plaintiff filed this action on March 26, 2018 against the VA and three individual defendants, (Doc. 2), and was granted leave to proceed *in forma pauperis*, (Doc. 5.)  On April 25, 2018, I dismissed the individual defendants from the action.  (Doc. 7.)  The VA answered on August 20, 2018.  (Doc. 17.)  On November 20, 2018, the VA filed a letter stating that "it had been unable to locate a copy of the documents produced to Plaintiff in 2014 that sets forth the precise information that it withheld from the production under Exemption 6" and "[t]o address this problem, the VA propose[d] to reprocess the documents on an expedited basis, determine anew which third party personal information should be withheld pursuant to Exemption 6, and produce the reprocessed documents to Plaintiff forthwith."  (Doc. 29.)  I granted the VA's request to produce the documents by November 26, 2018.  (Doc. 30.)

Subsequently, the VA moved for summary judgment.  (Docs. 35–38.)  On December 14, 2019, Plaintiff filed a first amended complaint, (Doc. 41), which the VA moved to strike, (Doc. 44).[8]  Because Plaintiff did not seek the VA's consent or leave to file an amended complaint, I

---

[8] I note that within this timeframe the case was stayed for approximately a month due to a lapse in Department of Justice Funding.  (*See* Doc. 42.)

granted the motion to strike.  (Doc. 46.)  On February 26, 2019, Plaintiff sought leave to file a

first amended complaint, (Doc. 48); I granted Plaintiff leave and denied the VA's summary

judgment motion as moot, (Doc. 49.)  Plaintiff filed his First Amended Complaint on March 29,

2019.  (Doc. 50.)  The First Amended Complaint added DoD as a Defendant.  (*Id.*)

On April 10, 2019, I adopted Defendants' proposed briefing schedule for their anticipated

summary judgment motion.  (Doc. 52.)  After granting Defendants' two extension requests,

(Doc. 53), Defendants filed their opening brief, as well as two declarations, on May 29, 2019.

(Docs. 59–63.)  Plaintiff then sought leave to file a motion for default judgment, (Doc. 64),

which I denied, explaining that Plaintiff could address any deficiencies in the Defendants'

briefing in his opposition, (Doc. 65).  Thereafter, Plaintiff filed a motion to compel.  (Doc. 66.)  I

denied the motion, and noted, "The documents that Plaintiff requests to enable him to respond to

the Government's motion for summary judgment appear to be the same documents that are the

subject of the underlying FOIA dispute."  (Doc. 67.)  On June 6, 2019, Plaintiff filed his

opposition to Defendants' motion, (Doc. 68), and on June 27, 2019, he filed an additional letter,

(Doc. 69).  On July 17, 2019, Defendants filed a reply and a reply declaration.  (Docs. 70–71.)

Plaintiff thereafter filed a sur-reply and a motion for a conference.  (Docs. 72–73.)  I denied the

motion for a conference and stated that I intended to rule based on the parties' written

submissions.  (Doc. 74.)

Plaintiff then sought leave to file a second amended complaint to add a claim under the

Federal Torts Claim Act, (*see* Docs. 75–77); I denied this request and explained that if Plaintiff

intended to pursue a FTCA claim he should do so in a separate action, (Doc. 81).  Plaintiff has

since filed three letters providing updates on his underlying administrative claims.  (Docs. 82–

84.)

## II.    Legal Standards

### A.  *Summary Judgment*

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007) (citation omitted).  Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a reasonable jury to find in its favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the

nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party[,]" summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### B. *Pro Se Litigant*

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se litigants." (internal quotation marks omitted)). However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### III.   <u>Discussion</u>

Defendants move for summary judgment on the grounds that (1) the VA conducted adequate searches for Sandler's records, (2) the VA properly asserted Exemption 6, (3) Plaintiff has no cognizable Privacy Act claim, and (4) Plaintiff's remaining claims similarly fail.  (*See generally* Defs.' Mem; Defs.' Reply.)[9]  Plaintiff cross moves for summary judgment arguing that he has not received all of the records because the Records produced to him do not contain documents from 1966–1989, and that the VA acted in bad faith.  (Pl.'s Opp. 6–9.)[10]  Plaintiff also argues that the DoD refused to provide him access to all information held on DEERS related to Sandler's account, and that he has properly asserted a Privacy Act Claim.  (*Id.* at 5, 11–13.)

### A.    *FOIA Claim*

#### 1.  **Applicable Law**

"Congress intended FOIA to permit access to official information long shielded unnecessarily from public view."  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks omitted).  Therefore, "[i]n order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA."  *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994)).  "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden."  *Id.* at 190–91; *see Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488–89 (2d Cir. 1999) ("[T]o establish

---

[9] "Defs.' Reply" refers to the reply memorandum of law in support of Defendants' motion for summary judgment and in opposition to Plaintiff's motion for summary judgment, filed on July 17, 2019.  (Doc. 70.)

[10] I construe Plaintiff's cross-motion as seeking additional discovery.

the adequacy of a search, agency affidavits must be relatively detailed and nonconclusory, and submitted in good faith.") (citation omitted).  "Affidavits submitted by an agency are accorded a presumption of good faith."  *Carney*, 19 F.3d at 812 (internal quotation marks omitted).  "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *Grand Cent.*, 166 F.3d at 489 (citation omitted).

FOIA exemptions are to be narrowly construed.  *Milner*, 562 U.S. at 565; *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("Consistent with [FOIA's] goal of broad disclosure, these exemptions have been consistently given a narrow compass.").  "FOIA specifies that a district court must conduct de novo review of an agency's claims to exemptions."  *Lee v. FDIC*, 923 F. Supp. 451, 453 (S.D.N.Y. 1996).  FOIA Exemption 6 exempts from disclosure information from personnel, medical, or other similar files, the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).  "Whether the names and other identifying information about an individual may be withheld under Exemption 6 is a two-part inquiry[]:"

> First, [the court] must determine whether the personal information is contained in a file similar to a medical or personnel file.  In considering whether the information is contained in a "similar" file, [the court] ask[s] whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file.  At the second step of the analysis under Exemption 6, [the court] balance[s] the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a "clearly unwarranted invasion of personal privacy."

*Osen LLC v. United States Cent. Command*, No. 18-CV-6069 (BCM), 2019 WL 4805805, at *4

(S.D.N.Y. Sept. 30, 2019) (quoting *Wood v. F.B.I.*, 432 F.3d 78, 86 (2d Cir. 2005) (citation omitted)).

The first step is "not a difficult hurdle to clear", *id.*, as the statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from Government records," *Wash. Post Co.*, 456 U.S. at 602; *see also Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014). The second step requires the Court to first identify whether there is any privacy interest in the information sought. *Fed. Labor Rels. Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (1992). "It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 285 (2d Cir. 2009); *see Dep't of Air Force v. Rose*, 425 U.S. 352, 380–81 (1976). "FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests." *Fed. Labor Rels. Auth.*, 958 F.2d at 510. Thus, "once a more than de minimis privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA." *Id.* "[T]he burden falls to the requesting party to establish that disclosure would serve a public interest cognizable under FOIA." *Osen*, 2019 WL 4805805, at *5 (internal quotation marks omitted). With regard to the public interest against which the privacy interest is to be weighed, the Supreme Court has made clear that there is only one relevant interest—"to open agency action to the light of public scrutiny." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 765, 772 (1989) (quoting *Rose*, 425 U.S. at 372). Whether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which

13

focuses on "the citizens' right to be informed about what their government is up to." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991) (quoting *Reporters Comm.*, 489 U.S. at 773).

### 2. Application

#### a. Adequacy of the VA's search

First, I consider the adequacy of the VA's search. The VA has provided a detailed non-conclusory declaration explaining how life insurance records, both electronic and paper, are stored within the VA, and how searches were conducted for Sandler's records. (*See* Weaver Decl.) Initially, in 2014, a folder with Sandler's records was produced to Plaintiff. (*See id.* ¶ 13.) As part of this litigation, the Insurance Center reprocessed the records responsive to the FOIA request. (*Id.* ¶ 18.) The Insurance Center conducted a search in VICTARS by inputting the full name of Sandler, which located Sandler's insurance folder and included the Sandler insurance file that had been produced in November 2014. (*Id.*) The VA then produced these Records, 259 pages in total, to Plaintiff. (*Id.* ¶ 19.)

Plaintiff argues that additional documents outside of those produced by the VA must exist. (Pls.' Opp. 4.) As evidence of this, Plaintiff avers that Sandler had an active insurance policy during the period of 1966–1989 and, therefore, Sandler's insurance folder should contain, but allegedly does not, at least one document from this time. (*Id.*) He further asserts that the VA's FOIA response should have included a copy of Sandler's life insurance contract. (*Id.*) The VA provides explanations for both of Plaintiff's contentions. Regarding the lack of documents from between 1966 and 1989, the Weaver Declaration submitted with the VA's reply explains:

> Although Sandler's whole-life policy was active from 1942 to 1992, that does not mean that records were being added to his insurance folder. A record of mundane activity such as the VA's monthly or quarterly receipt of insurance premium payments would not be kept on file in a Veteran's insurance folder.

14

(Weaver Reply Decl. ¶ 6.)[11]  As to the lack of a life insurance contract within the Records, the Weaver Declaration explains that the terms of coverage for Sandler's life insurance were established by statute; therefore, "[i]t was . . . not necessary to issue each Veteran a life insurance contract as is typically provided by private life insurance carriers.  Instead, to evidence issuance of a life insurance policy, the VA would send the Veteran an insurance certification," which would not be kept in the Veteran's insurance folder.  (*Id.* ¶ 7.)

Defendants argue that Plaintiff's "challenge to the VA's FOIA response . . . boils down to his bald assertion that there simply must be more records" and that "[t]his sort of argument does not undermine an agency's reasonable search for responsive records."  (Defs.' Reply 3.)  I agree.  As is required by the law, the VA's search "was reasonably calculated to discover the requested documents."  *Grand Cent.*, 166 F.3d at 489.  Plaintiff's "purely speculative claims about the existence and discoverability of other documents" do not rebut the presumption of good faith accorded to the VA's declaration.  *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Additionally, Plaintiff argues that the VA acted in bad faith.  (Pl.'s Opp. 6–10.)  As evidence of this bad faith, Plaintiff points to an alleged discrepancy between the VA's two productions.  (*Id.* at 7–8.)  Plaintiff states that when comparing the VA's two productions, he found in the November 2018 production a one-page document, dated February 29, 2016, and a two-page document dated November 30, 1965, neither of which purportedly was included in the November 2014 production.  (*Id.*)  Plaintiff points to the 2016 letter as the "smoking gun" evidence of bad faith, (*id.* at 8–9); however, the first production, which occurred in November

---

[11] "Weaver Reply Decl." refers to the supplemental declaration of Paul G. Weaver, filed with Defendants' reply on July 17, 2019.  (Doc. 71.)

2014, happened prior to the creation of this document.  The discovery of the second document does not suggest bad faith.  In fact, as Defendants point out, this evidences the VA's good faith and willingness to reprocess Plaintiff's request when it realized there was no record of the information withheld in 2014.  *See Fischer v. U.S. Dep't of Just.*, 723 F. Supp. 2d 104, 108–09 (D.D.C. 2010) (explaining that "mistakes do not imply bad faith.  In fact, the agency's cooperative behavior of notifying the Court and plaintiff that it had discovered a mistake, if anything, shows good faith.")  The failure to include this document in the initial production also does not render the VA's search inadequate.  *See Nat. Res. Def. Council, Inc. v. Wright-Patterson Air Force Base*, No. 10 Civ. 3400(SHS), 2011 WL 3367747, at *6 (S.D.N.Y. Aug. 3, 2011) (holding that the fact that the agency "confessed to a mistake in its initial declaration and then corrected that mistake does not render the search inadequate," and noting that "[a]n agency should be encouraged, rather than discouraged, to reappraise its position, and when appropriate, release documents previously withheld") (internal quotation marks omitted).  In sum, because I find that the VA's search was reasonable and conducted in good faith, I find that the VA has conducted an adequate search, and Plaintiff is not entitled to any additional discovery that he may be seeking.  *See Carney*, 19 F.3d at 813*)* (finding no abuse of discretion where district court denied plaintiff's request for discovery based on "bare allegations" "grounded in mere speculation").[12]

---

[12] Plaintiff also attempts to establish bad faith on behalf of Dent-Lockett based on her February 26, 2016 letter to the BVA stating that the "insurance and claims files of the referenced veteran are temporarily transferred to your office" and her subsequently switching jobs without alerting her colleagues to where she kept the Records.  (Pl.'s Opp. 7–9.)  I note that it remains unclear whether Dent-Lockett did in fact transfer copies of the Records to the BVA at that time, and the BVA's remand to the VA to locate the documents suggests that she did not.  (*See* Pl.'s Sur-reply Ex. B.)  Regardless, Plaintiff's conclusory allegations, including that Dent-Lockett "surreptitiously hid" the Records, (*see id.* at 7), are unsupported by the record.  Instead, it appears that Dent-Lockett simply forgot about the Records when she left her job in April 2016.

Finally, Plaintiff includes a letter that appears to have been in Sandler's folder indicating that in 1950, Sandler's insurance file was not complete.  (Pl.'s Opp. 10.)  The VA requested that Sandler provide certain information to

b.   Application of Exemption 6

Next, I consider the application of Exemption 6 to the Records.  Here, the VA withheld

the following types of information pursuant to Exemption 6:  "third parties' personally

identifying information, specifically their residential addresses and telephone numbers; financial

information concerning the amount of proceeds from Sandler's life insurance policies allocated

to third parties; Sandler's annual salary for certain years; Sandler's Social Security Number; and

medical information of Sandler and his mother."  (Defs.' Mem. 11 (citing Weaver Decl. ¶ 20 &

Ex. 3).)  There is no record of Sandler or the third-parties consenting to the release of the

redacted information.  (*Id.*)  As part of the Weaver Declaration, the VA submits a Vaughan Index

which provides a description of the redacted documents and an explanation for each redaction.

(*See* Weaver Decl. Ex. 3.)

Regarding the first step, I find that the Records at issue here are "personnel [or] medical

files [or] similar files" within the meaning of Exemption 6 because the Records are government

records containing "information which applies to a particular individual."  *Wash. Post Co.*, 456

U.S. at 602; *see Associated Press*, 554 F.3d at 291 ("The phrase 'similar files' has a broad

meaning and encompasses the government's records on an individual which can be identified as

applying to that individual.") (internal quotation marks omitted).

Next, I "consider whether there is a privacy interest in the information sought.  *Fed.

Labor Rels. Auth.*, 958 F.2d at 509.  With regards to medical information, there is clearly a

privacy interest in such information, and Exemption 6 explicitly recognizes as such.  *See Wessler

v. United States Dep't of Just.*, 381 F. Supp. 3d 253, 258 (S.D.N.Y. 2019) ("Medical records

---

facilitate the search for these records.  (*Id.*)  Contrary to Plaintiff's contention, this document, which references
records missing from Sandler's file more than 70 years ago, does not demonstrate that the VA acted in bad faith
when processing Plaintiff's FOIA request.

most certainly implicate a protected privacy interest.")  As to the identifying information about third parties, "[i]t is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA."  *Associated Press*, 554 F. 3d at 285.  An individual has a privacy interest in financial information.  *See Tomscha v. Gen. Servs. Admin.*, 158 F. App'x 329, 330–31 (2d Cir. 2005) (affirming district court's withholding of information related to employee's compensation pursuant to Exemption 6).  Finally, there is undoubtedly a privacy interest implicated by Sandler's social security number.  Defendants do point out that Sandler is deceased, and his mother is presumed to be deceased, (*see* Defs.' Mem. 12); however, "the death of the subject of personal information does diminish to some extent the privacy interest in that information, though it by no means extinguishes that interest."  *Wessler*, 381 F. Supp. 3d at 259 (citation omitted)[13].  Instead, I consider the death of the individual when balancing the privacy interest against the public interest.  *Id.*

Having found that Sandler, his mother, and the third parties have a privacy interest in the non-disclosure of medical information, financial information, and certain identifying information, I balance "the public's need for the information against the individual's privacy interest to determine whether the disclosure of the [information] would constitute a clearly unwarranted invasion of personal privacy."  *Osen*, 2019 WL 4805805, at *4.  "[I]n balancing the competing interests the public interest side of the scale must be measured by FOIA's basic purpose to expose agency action to the light of day."  *Fed. Lab. Rels. Auth.*, 958 F.2d at 511.

---

[13] I note that *Wessler* involved FOIA Exemption 7(C) which Department of Justice ("DOJ") has described as "the law enforcement counterpart to Exemption 6."  *See* Department of Justice, *Department of Justice Guide to the Freedom of Information Act*, Exemption 7(C), https://www.justice.gov/oip/page/file/1206756/download.  Given the similarities between the two exemptions, I find *Wessler* informative.  Additionally, regarding Exemption 6, the DOJ has explained, "[a]n individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA."  *Id.* Exemption 6, https://www.justice.gov/oip/page/file/1207336/download.

Here, Plaintiff bears the burden of establishing that disclosure would serve the public interest. *See Osen*, 2019 WL 4805805, at *5.

Defendants argue that "[t]he redacted information appears in forms specific to Sandler's management of his life insurance benefits" and the "release of the information withheld by the VA would not contribute 'significantly to public understanding of the operations or activities of the government,'" (Defs.' Mem. 12 (quoting *Fed. Lab. Rels. Auth.*, 510 U.S. at 495–96).)  I agree.  Plaintiff has provided no reason why access to an unredacted copy of the Records would serve the core purpose of FOIA.  Disclosing this information, which appears to concern private citizens, will not inform the public about "what their government is up to."  *Ray*, 502 U.S. at 177 (internal quotation marks omitted); *see Reporters Comm.*, 489 U.S. at 773 ("Disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind.") (FOIA's purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.").[14]  Although I recognize that Sandler's, and likely his mother's, privacy interests are diminished, given how weak the public's interest is and Plaintiff's failure to provide a reason why access to an unredacted copy of the Records would serve the core purpose of FOIA, I find that the privacy interests outweigh any public interest.  As the D.C. Circuit has aptly recognized, "something, even a modest privacy interest, outweighs nothing every time."

---

[14] I note that a fairly recent case within this District, *Reclaim the Recs. v. Dep't of Veterans Affs.*, No. 18 CIV. 8449 (PAE), 2020 WL 1435220 (S.D.N.Y. Mar. 24, 2020), found that Exemption 6 was inapplicable to a file held by the VA which contained information about deceased VA benefits recipients.  There, however, the court noted that the "FOIA request . . . ar[o]se in an unusual posture.  Not only do the parties agree that the records in dispute exist and are within the VA's control, they also appear to agree that the BIRLS Death File, to the extent it is accurate, is not subject to Exemption 6."  *Id.* at 8.  Instead, the VA sought to withhold the records at issue because it could not verify their accuracy.  The court rejected this argument, explaining that the VA had already produced 5 million records from the file, and that the VA attempted to withhold production based on its "shoddy" recordkeeping.  *Id.* at 10.  Additionally, the file was sought for use on Ancestry.com to allow veterans to search their family history.  *Id.* at 1.  The circumstances at issue in this case are materially different.

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).  Therefore, I find disclosure of this information would be clearly unwarranted.[15]

In conclusion, I find that the VA conducted an adequate search, produced the records requested by Plaintiff, and that Defendants' redactions of the Records properly fall within Exemption 6.  Plaintiff's FOIA claim is dismissed.

### B.  *Privacy Act Claim*

Broadly, the Privacy Act provides that each agency that maintains a system of records shall "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness."  5 U.S.C. § 552a(e)(5).  Pursuant to the Privacy Act, "the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection" and may be awarded actual damages where the agency's actions were intentional or willful.  *Id.* § 552a(g)(1), (g)(4).  Additionally, "the Act's right-of-access provision requires agencies, 'upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the agency's system of records, to permit him . . . to review the record.'"  *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014) (citing 5 U.S.C. § 552a(d)(1)).  Plaintiff argues that he has a cognizable claim under the Privacy Act in part because Dent-Lockett did not transfer the Records to the BVA in time for his June 2017 hearing, therefore delaying a decision on his insurance proceeds claim.  (Pl.'s Opp. 11–12.)  Defendants respond that (1) Sandler is deceased

---

[15] I note that given that I have found no FOIA public interest, there is a compelling argument that I am not even required to balance the two interests.  *See* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption6.pdf.  ("Alternatively, if a significant privacy interest is found to exist, but there is no FOIA public interest in disclosure, the information should be protected").

and has no rights under the Privacy Act, (2) the Privacy Act grants rights to the individual about whom the records pertain, and (3) Plaintiff has no cause of action regarding the misplaced records.  (Defs.' Reply 6.)  I agree.

In *Warren*, 744 F.3d at 842–43, a plaintiff sought to obtain records from the Social Security Administration ("SSA") related to his late father's disability status with the hopes of using the records to support a claim for life insurance proceeds.  Initially, Plaintiff brought both FOIA and Privacy Act claims, seeking release of the records, damages, and reimbursement of fees.  *Id.*  After the SSA provided the records, he abandoned his claim for injunctive relief.  *Id.* at 843.  In affirming the district court's dismissal of plaintiff's damages claim, the Second Circuit explained that "deceased individuals generally do not enjoy rights under the Privacy Act," and joined under circuits "in holding that the Act does not provide an individual with a right to demand materials pertaining to him but contained only in another individual's records."  *Id.* at 844.  The Second Circuit found that because plaintiff was not entitled to his father's records, the SSA's refusal to provide them did not violate the Act.  *Id.*

The facts here are similar to those in *Warren.*  Plaintiff seeks records related to Sandler who is deceased, and Sandler generally does not have rights under the Act.  Although Sandler's life insurance records may pertain to Plaintiff, they are Sandler's records, not Plaintiff's; therefore, Plaintiff has no cognizable claim to damages under the Privacy Act, and, as I have noted above, the Records have been produced to Plaintiff.  *See Warren*, 744 F.3d at 844; *Bryant v. Comm'r of Soc. Sec.*, No. 14CV5764-LTS-JCF, 2015 WL 6758094, at *15 (S.D.N.Y. Nov. 5, 2015) (observing that "the social security number for which [plaintiff] seeks information is not linked to her. Therefore, the logic of Warren-that the Privacy Act does not allow an individual access to information about that individual unless the agency can identify the requested record in

its system of records as belonging to that individual-likely bars [plaintiff's] claim under the Privacy Act"); *Whitaker v. Cent. Intel. Agency*, 31 F. Supp. 3d 23, 47–48 (D.D.C. 2014), *aff'd sub nom. Whitaker v. United States Dep't of State,* No. 14-5275, 2016 WL 9582720 (D.C. Cir. Jan. 21, 2016) (explaining that "the OMB Guidelines conclude that 'the [Privacy Act] did not contemplate permitting relatives and other interested parties to exercise rights granted by the Privacy Act to individuals after the demise of those individuals'" and finding that the State Department was not required to process a document request under the Privacy Act for the relative of a deceased individual) (citation omitted).  Additionally, even if Plaintiff's claim was cognizable under the Privacy Act, it fails because Plaintiff has not shown that the misplacement of the Records proximately caused him any harm.  *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1006–07 (D.C. Cir. 2009) (explaining that to recover damages a plaintiff must establish among other things that he was "aggrieved by an adverse determination" which was proximately caused by "the agency's reliance on . . . inaccurate records") (citations omitted). Here, in August 2017, the BVA remanded Plaintiff's claim for insurance proceeds to the agency and directed the agency to "make all possible attempts to obtain the missing VA insurance records."  (*See* Pl.'s Sur-reply Ex. B.)  Rather than being harmed by the BVA's action, Plaintiff's claim was advanced by its remand and directions.  Indeed, shortly after the remand, the Records were located.  (*See id.* Ex. A) (letter from the VA explaining that the Records were located). Therefore, no adverse determination or harm occurred to the Plaintiff, especially given the fact that the Records were located shortly after the BVA's decision.[16]  For the aforementioned reasons, Plaintiff's Privacy Act claim is dismissed.

---

[16] It appears that Plaintiff's administrative claim for Sandler's life insurance proceeds was subsequently denied. (*See* Doc. 84-1, at 5–9)

### C. *Remaining Claims*

Plaintiff appears to bring a FOIA claim against the DoD.  (*See* FAC 10.)  Because this claim is not cognizable under FOIA, I only briefly address it here.  Under FOIA, "federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"  *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. at 142 (quoting *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150 (1980)).  "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements."  *Id.*  Put simply, Plaintiff has not requested records from DoD, and therefore no records have been withheld.  Instead, Plaintiff requests a DS Logon so that he can access Sandler's DEERS account.  The DoD found that Plaintiff was not eligible for a DEERS account because he did not fit into any of the eligibility categories, and therefore has not responded.  (*See* Herrington Decl. ¶¶ 8–9 & Ex. 2.)

Plaintiff also requests I direct the VA to issue a Certificate of Eligibility for Federal Home Loan Benefit, which the VA previously declined to do.  (*See* FAC 16, 19.)  First, it is unclear whether Plaintiff has exhausted his administrative remedies within the VA, and second, I likely lack jurisdiction to address this claim.  *See* 38 U.S.C. § 511(a) ("The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to [certain exceptions], the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (finding no subject matter jurisdiction over challenge to VA's denial of certain benefits). For these reasons, Plaintiff's remaining claims are dismissed.

IV.      <u>**Conclusion**</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED,

and Plaintiff's cross motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to close the open motion at Docket Entry 59,

and to close the case.

SO ORDERED.

Dated: November 8, 2021
        New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge

24